UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAITLYN FLORIAN,

     Plaintiff,

v.                                       Case No. 1:21-cv-1
                                       Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant,

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claim for supplement security income (SSI).

On December 27, 2018, plaintiff filed an application for SSI alleging a disability onset date of November 12, 2018. PageID.56. At that time, plaintiff was still in high school. Plaintiff identified her disabling conditions as generalized anxiety disorder, post-traumatic stress disorder (PTSD), adjustment disorder, disruptive mood dysregulation disorder, and oppositional defiant disorder. PageID.249. Plaintiff completed high school in May 2019 and has no past relevant work. PageID.63, 65.[1] An ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on April 15, 2020. PageID.56-67. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] In this regard, plaintiff "testified she graduated from high school in May 2019 with a final GPA of approximately 3.0." PageID.63.

1

## I.    LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . .  physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date."  *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.    ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation.    At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her application date of December 27, 2018.  PageID.58.  At the second step, the ALJ found that plaintiff had severe impairments of: major depressive disorder; adjustment disorder; generalized anxiety disorder; social anxiety disorder; oppositional defiant disorder; bipolar disorder; and PTSD.  *Id*.  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.59.  In reaching this determination, the ALJ gave specific consideration to Listings 12.04, 12.06, 12.08, and 12.15.  PageID.59-61.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to receiving, comprehending, and executing simple routine tasks, making simple work related decisions, and having no more than occasional workplace changes; she can have occasional contact with public, coworkers, and supervisors; she can perform no assembly line or hourly production quota work.

PageID.61.  The ALJ also found that plaintiff has no past relevant work.  PageID.65.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at all exertional levels.  PageID.66.  Specifically, the ALJ found that plaintiff could perform the requirements of unskilled work in the national economy such as industrial cleaner (medium exertional level, 1,200,000 jobs), stores laborer (medium exertional level, 70,000 jobs), and laundry laborer (light exertional level, 150,000 jobs).  *Id*.  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security

Act, from December 27, 2018 (the date the application was filed) through April 15, 2020 (the date of the decision).  PageID.67.

### III.    DISCUSSION

Plaintiff raises a single error on appeal.

**The Decision Lacks Substantial Evidence to Deny Benefits When it Improperly Rejects the Opinions in a Treating Source Medical Statement.**

The gist of plaintiff's claim is that the ALJ failed to properly evaluate the opinion her treating psychologist, Leigh Wendtland, Ph.D.  For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a).  In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record."  20 C.F.R. § 416.920c(b).  In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors.  *See* 20 C.F.R. § 416.920c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

5

20 C.F.R. §416.920c(b)(2).[2]  If the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. § 416.920c(b)(3) (internal citations omitted).

In addition, the new regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record."  20 C.F.R. § 416.920c(b)(1).  Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate."  *Id*.  "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.  *Id*.

As one court observed, "[t]hese new regulations plainly are less demanding than the former rules governing the evaluation of medical source opinions, especially those of treating sources."  *Hardy v. Commissioner of Social Security*, 554 F. Supp. 3d. 900, 906 (E.D. Mich. 2021).  Nevertheless, the new regulations set forth a minimum level of articulation for a reviewing court. *Id*.

The ALJ addressed Dr. Wendtland's opinion as follows:

---

[2]    The regulations explain "supportability" as follows:  "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(1).  The regulations explain "consistency" as follows:  "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2). *

The claimant's psychologist, Leigh Wendtland, Ph.D., provided a statement in March 2020 (Ex. 13F). Dr. Wendtland stated she had treated the claimant for approximately 6 years and saw her on average every third week of the month. She stated the claimant's diagnoses impacted her ability to work. She stated the claimant would often go to work consistently for approximately one month, and then she would not go in due to not feeling well or missing her alarm. She stated the claimant would then experience anxiety about returning to work and would just stop going. She indicated the claimant also had issues getting along with coworkers and supervisors, but Dr. Wendtland stated that more often than not, the claimant would have opportunities to redeem herself but would choose to stop going to work. Dr. Wendtland stated that conflict caused the claimant to experience an increase in anxiety, and her depression caused her to have low productivity and motivation. Dr. Wendtland also indicated the claimant became overwhelmed with caring for day-to-day activities while living on her own. Dr. Wendtland indicated that things would not change for the claimant without some significant differences in her functioning. Dr. Wendtland stated the claimant had a consistent pattern of obtaining different employments, going for a short time, and then stopped going. She stated she did not see things changing for the claimant without some significant supervision or somebody taking her to work or picking her up or being more hands on. I find this opinion less persuasive. While I agree the record consistently showed the claimant had difficulty maintaining employment, as noted above, all of the jobs involved a high degree of social contact, and this limitation is accounted for in the assessed residual functional capacity. In addition, Dr. Wendtland's opinion is largely neither supported nor consistent with the record. Instead, Dr. Wendtland speculates on the claimant's future abilities and limitations rather than giving current functional limitations and then predicates her thoughts on unrelated issues such as the claimant's ability to obtain daily transportation. To the contrary, the record consistently noted normal to mild mental status examinations. The record showed the claimant did reasonably well in school with regular education classes and was able to graduate with a 3.0 GPA. The record reflects she was able to generally live on her own, attend school with few absences, and participate in extracurricular activities (Ex. 14E; 4F; 5F pgs. 21-25; 10F pgs. 4, 6, 8, 11, 30, 32; 11F pgs. 31, 34, 37; Hearing Audio at 1:17:05, 1:30:25, 1:36:50, 1:40:00). Accordingly, this opinion is less persuasive.

PageID.64-65.

Plaintiff raises four objections to the ALJ's evaluation of Dr. Wendtland's opinion. Plaintiff's Brief (ECF No. 16, PageID.671).  First, plaintiff contends that the ALJ's evaluation relies on insubstantial evidence. Specifically, the fact that plaintiff completed school, had few absences from school, and participated in extracurricular activities at school does not conflict with Dr. Wendtland's opinion and is not sufficient to establish the ability to maintain full-time

employment.  The Court notes that when plaintiff applied for SSI, she was 18 years old, still in high school, and had very little work history.  Plaintiff points out that her work as a teenager included part-time seasonal jobs at an ice cream store, and short stints (sometimes only weeks) at various jobs where she was eventually fired, including a Subway restaurant, a McDonald's restaurant, a dry-cleaning company, a take-out restaurant, and a Tractor Supply Company store. *Id*. at PageID.661-662.  Given this history, the ALJ relied on the available evidence, which included her ability to complete tasks while in high school.  In addition, the ALJ considered plaintiff's limited work history in developing the residual functional capacity (RFC) stating that,

> While I agree the claimant has significant mental impairments, her symptoms are accommodated for in the residual functional capacity by limiting her abilities to interact with others, comprehend and execute tasks, make decisions, deal with workplace changes, and perform assembly line or hourly production quota work.

PageID.64.  Accordingly, this claim of error is denied.

Second, plaintiff contends that the evaluation relies on inaccurate summaries of the evidence.  Specifically, plaintiff contends that while living on her own, plaintiff's landlords "experienced her messiness, poor hygiene and irresponsibility."  *Id*.  After high school, plaintiff rented a room from a family (PageID.597) but was later evicted.  A transcript of text messages from plaintiff's landlord for a two-month period from December 31, 2019, through January 27, 2020, indicate that plaintiff had poor hygiene, left moldy food in the cupboards, had no sheets on the bed, left candy wrappers on the floor, and had "food, candy and soda stored all around the chair in her living room with a blanket covering it."  PageID.328.  Plaintiff contends that this evidence is not consistent with the ALJ's conclusion that plaintiff "was able to generally live on her own." PageID.65.  The Court notes that the landlord's evidence reflects only a two-month period (December 2019 through January 2020). The ALJ considered all of the evidence in the record since plaintiff filed her SSI claim to reach this determination.  *See* PageID.62 ("Records noted she

was generally able to live on her own, although she still received parental help concerning activities such as meal planning and bills (Ex. 2F; 3F; 5F).").  "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference."  *Id*. at 773 (6th Cir. 2001).  Accordingly, this claim of error is denied.

Third, plaintiff contends that the evaluation ignores almost all of the medical evidence.  Specifically, the decision states that, "the record consistently noted normal to mild mental status examinations" (PageID.65).  Plaintiff's Brief at PageID.671. Plaintiff points out that while the ALJ conclude that "[s]he was consistently noted to be oriented with appropriate affect and intact functional status" (PageID.62), the ALJ cites no records for this conclusion. PageID.671.  The ALJ does not identify plaintiff's treating psychiatrist, Tariq Faridi, M.D. However, the ALJ refers to the doctor's treatment, "15-minute psychiatry sessions every one to two months," and cites the relevant medical records (Exh. 5F).  *See* PageID.62-65, 451-476 (Ex. 5F).  The ALJ found that,

> On occasion, she was noted to be anxious, guarded, and distractible with dysphoric mood and labile affect. However, she was consistently noted to be oriented with appropriate dress and appearance, fair insight and judgment, appropriate thought content, appropriate behavior, and normal perception and flow of thought.

PageID.62.

Plaintiff also contends that while the case involves exclusively severe mental impairments, the ALJ's decision "is remarkably sparse on its articulation of the mental health treatment records."  Plaintiff's Brief at PageID.672.  The Court does not agree with that observation. As discussed, plaintiff alleged a disability onset date of November 12, 2018, while she was still in high school.  The administrative hearing was held on April 1, 2020, less than one

year after plaintiff graduated from high school.  PageID.73-108. The ALJ addressed the treatment records for the relevant time period, as well as the opinions of non-examining psychological consultant Robert Gerl, Ph.D. (March 4, 2019) and plaintiff's treating psychologist Dr. Wendtland (March 30, 2020).  PageID.62-65, 118-122, 648-652.[3]  Accordingly, this claim of error is denied.

Fourth, plaintiff contends that the evaluation misstates Dr. Wendtland's opinions. For example, plaintiff contends that the ALJ incorrectly referred to the doctor's opinions as speculation stating,

> Dr. Wendtland's opinion is largely neither supported nor consistent with the record. Instead, Dr. Wendtland speculates on the claimant's future abilities and limitations rather than giving current functional limitations and then predicates her thoughts on unrelated issues such as the claimant's ability to obtain daily transportation.

PageID.65.  Plaintiff explains that,

> Rather than "speculate" on the future, Dr. Wendtland based her opinion on the established pattern demonstrated by Ms. Florian, where she misses a day, or a couple days, and soon is out of the workplace. (PageID.650-651). That was the reason that Dr. Wendtland expected Ms. Florian to frequently miss work.

Plaintiff's Brief at PageID.674.  Plaintiff also contends that the ALJ erred because the doctor never commented on daily transportation.  *Id.*

It appears to the Court that Dr. Wendtland did engage in some speculation and did comment on transportation to and from work as one reason why plaintiff would not be able to be employed in the future.  When asked by plaintiff's attorney, "As we look forward, would you anticipate any change in her ability to maintain employment in the near future?", the doctor responded:

> In the near future without some significant differences in her functioning, no.  I'm not a fortune teller, so I can't tell you if she will for sure change or if this pattern will be maintained throughout her life.  Although I think you can look at history, she has had a pretty consistent pattern with obtaining different

---

[3] The Court notes that a scrivener's error appears in the ALJ's decision, which refers to Dr. Gerl's opinion (Exh. 1A) as "Exh. X".  PageID.64.

employments, going for a short time and then stopping going.  Without some significant supervision or somebody kind of taking her to work or picking her up or being more hands on, I don't know why that would change.

PageID.651.  Given this record, the Court concludes that the ALJ did not misstate Dr. Wendtland's opinions.  Accordingly, this claim of error is denied.

## IV.   CONCLUSION

For these reasons, the Commissioner's decision will be **AFFIRMED**.  A judgment consistent with this opinion will be issued forthwith.


Dated:  September 15, 2022                    /s/ Ray Kent
                                              RAY KENT
                                              United States Magistrate Judge